WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>William Roy Lutz, Jr.,<br><br>    Defendant. | CR 03-422 TUC DCB ( JJM)<br><br>**ORDER** |

## PROCEDURAL BACKGROUND AND CASE OVERVIEW

The Court sentenced Defendant Lutz the first time on September 24, 2003, to 46 months imprisonment for violating 18 U.S.C. § 1704, for possessing a lock-box key suited for use in an authorized receptacle for the deposit or delivery of mail. The Court found that there was a reasonable inference, based on a preponderance of the evidence, that a lock-box key found in Defendant's hotel room was used to acquire stolen mail found in his hotel room. The Court imposed an enhanced sentence, based on the stolen mail being relevant conduct with victims in excess of 50 and intended loss in excess of $10,000. The Court also departed up based on Defendant's extensive criminal history which showed that the Defendant was a repeat offender and a danger to the community and to society.

The Defendant appealed the sentence for the following reasons: 1) the relevant conduct upward departures were not supported by the evidence because the Court considered a preponderance of the evidence instead of applying the clear and convincing standard of review and 2) the Court erred in considering Lutz' criminal history to constitute an

aggravating circumstance of any kind or to a degree not adequately taken into consideration by the Guidelines.

Prior to a decision by the appellate court, the parties stipulated to remand the case for resentencing because the Government conceded that the proper standard of proof was clear and convincing evidence. At resentencing, this Court was prepared to consider whether there was clear and convincing evidence to support its factual findings, but the Supreme Court case *Blakely v. Washington*, 542 U.S. 296 (2004) caused this Court, based on *United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004) (*Ameline I*),[1] to decline to consider sufficiency of the evidence issues pertaining to § 2B1.1 enhancements because the number of victims and intended loss was not plead in the Indictment. Instead, the Court alternatively sentenced the Defendant to 41 months in prison based on a Criminal History Category upward departure.

At Defendant's original sentencing, a 3 level upward departure was adequate to afford deterrence and to protect the public because with the § 2B1.1 enhancements the Defendant had an offense level of 13. The Court departed upward 3 levels to reach the sentence it imposed: 46 months. At the original sentencing, the Court found that the appropriate sentence for the Defendant was 46 months, with or without the enhancements of the base offense level for the "50 plus" victims and intended loss being between $10,000 and $30,000. (*See* Sentencing Transcript, September 24, 2003, at 87, 91.) At the second sentencing on August 5, 2004, the Court faced this exact scenario, and it made a 9 upward

---

[1] Opinion amended and superseded *United States v. Ameline*, 400 F.3d 646, *rehearing en banc* 409 F.3d 1073 (2005) (*Ameline II*).

departure to the offense level of 13, pursuant to § 4A1.3(a)(4)(B).[2] The guideline range was 33 to 41 months, and the Court imposed a sentence of 41 months in prison.

Again, Defendant appealed his sentence. On July 18, 2005, the court of appeals issued a Memorandum decision and entered Judgment on August 9, 2005, remanding the case and directing this Court to consider the Defendant's sentence in light of *United States v. Booker*, 125 S. Ct. 738 (1005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005 (en banc), and to *see also*: *United States v. Moreno-Hernandez*, 2005 WL 1560269 (9th Cir. July 5, 2005). (Memorandum at 2.) The remand did not identify any constitutional infirmity in the Court's calculation of the guideline range applicable for Defendant's sentence, which this Court made after careful consideration of the Presentence Report, the Plea Agreement, and the parties' sentencing briefs. Accordingly, the Court selected the applicable sentencing guideline range at the time of Defendant's sentencing on August 5, 2004. The Court does not need to revisit this calculation on remand.

Subsequent to remand, on August 25, 2005, the Court called for full briefing of 18 U.S.C. § 3553(a) sentencing factors, which pre-*Booker* were largely overshadowed by now excised § 3553(b), which mandated that judges select a sentence within the applicable guideline range unless the statutory standard for a departure was met. The parties have filed their resentencing briefs.

### *BOOKER AND AMELINE:* **RESENTENCING**

Defendant argues: "the guidelines define reasonableness in sentencing. To go outside the guidelines requires the Court to conduct an evidentiary hearing, assess a burden of proof on the party wishing to go outside the current definition of reasonableness, and

---

[2] The Court made a Criminal History upward departure, not an upward departure in the Defendant's offense level. See *United States v. Martin*, 278 F.3d 988, 1001-1004 (9th Cir. 2002) (vertical offense level departures are prohibited, but allowing horizontal departures based upon under-represented criminal history). Pursuant to U.S.S.G. § 4A1.3(a)(4)(B), the Court is required to move incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

3

require some sort of legal determination by jury as to its truthfulness. 5th and 6th Amendment to the United States Constitution; *Blakely v. Washington*, (citation omitted) *Apprendi v. New Jersey*, (citation omitted). If a defendant seeks to mitigate, the Defendant would have the burden of proof beyond a reasonable doubt. If the prosecution wishes to aggravate, the government carries the burden beyond a reasonable doubt." (Defendant's Memorandum at 3.) Defendant argues that the Court aggravated the Defendant's sentence, based on his "admitted extensive criminal record," without the benefit of a jury determination or burden of proof. *Id.*

Defendant argues that the Sentencing Guidelines took his past criminal record into consideration because a Criminal History Category VI by definition covers the most intractable of all offenders, most likely to continue their criminal careers, and has no outer limit for criminal history points beyond 13. With a category VI criminal history, the sentencing guideline range would be 6 to 12 months if the base offense level were 4 (6 minus 2 points for acceptance of responsibility) as would be calculated without the challenged enhancements for offense characteristics of "50 plus" victims and loss greater than $10,000. Defendant argues that the guideline range of 6 to 12 establishes the "per se" reasonable sentence, and the Court therefore imposed an unreasonable sentence of 41 months in prison.

The Government correctly notes that Defendant's position regarding the need for an evidentiary hearing at which a jury would find that Defendant's criminal history is under-represented beyond a reasonable doubt is contrary to the advisory guideline scheme created by *Booker*. Under the now advisory guideline scheme this Court may consider any relevant facts and circumstances to determine the defendant's sentence, regardless of whether those facts or circumstances are found by a jury or admitted by a defendant. See *Ameline*, 409 F.3d at 1077-78 ("A constitutional infirmity arises only when extra-verdict findings are made in a mandatory guidelines system.")

1  Normally, the Court would not revisit its guideline sentencing calculation on an
2  *Ameline* remand unless directed to do so. Here, however, the Court's guideline calculation
3  at Defendant's sentencing on September 24, 2003, was flawed because the Court applied a
4  preponderance of the evidence standard instead of the clear and convincing standard of
5  review. Therefore, this Court reviews the evidence presented to support the relevant conduct
6  enhancements it made to Defendant's base offense level, pursuant to U.S.S.G. §2B1.1, based
7  on the number of victims and amount of loss associated with the stolen mail found in the
8  Defendant's hotel room.

9  At the September 24, 2003, sentencing, the Government called two witnesses:
10 United States Postal Inspector Robert Sticht and United States Probation Officer Christopher
11 Howard. The Postal Inspector testified that stolen mail addressed to 61 different people was
12 found underneath the Defendant's bed during the search of his hotel room. (TR[3] 3/24/03 at
13 26.) The Defendant discarded two stolen credit cards and a counterfeit check just before
14 arrest. *Id.* at 21, 25, 27. A counterfeit postal arrow key and two stolen credit card
15 convenience checks were found on him when he was arrested. *Id.* at 43. All arrow locks are
16 identical, meaning that any arrow key will open any arrow lock on any mail box in the city.
17 *Id.* at 43, 63. "Arrow keys are used to open apartment panel boxes and NCB, neighborhood
18 delivery collection box units, the big silver free-standing boxes. They open the back of the
19 NCBs and the apartment panels – they open them up so the carriers can deliver mail to more
20 than one box at a time." *Id.* at 12. There were four arrow locks found in Defendant's room
21 and the key found on the Defendant opened three of the locks, but the fourth was too stiff to
22 open. *Id.*

23 The Postal Inspector distributed a questionnaire to the owners of the stolen mail, and
24 30 to 40 responded that they had never received it. Mail theft victims provided the Postal
25 Inspector with several stolen and counterfeit checks that had been fraudulently made payable

---

[3]Transcript of Record.

to, and in some instances negotiated by, the Defendant. See (TR at 183 (counterfeit check in amount of $25 made payable to Defendant and cashed on victim's account; TR at 185-86 (two altered checks made payable to Defendant in the amounts of $150 an d$1,968.19); (TR at 187 (altered check made payable to Defendant for $175 and cashed and deposited into a Bank One account)). There was testimony that at least a couple of pieces of mail found in Defendant's hotel room had been sent by victims for delivery at a business complex where delivery was made to a lock-box, there had been no reported break-ins– so "in order to open those boxes [and take the mail found in Defendant's hotel room], it would be necessary to have a key." (TR at 15, 49.)

The Probation Officer testified that he followed the methodology set out in the commentary in § 2B1.1 to determine the enhancements for "intended loss" and the "number of victims." (TR at 65-70.) He used the face value of the stolen and counterfeit checks as the "intended loss" amount. (TR at 67.) He assigned a $500 value to the stolen credit cards and credit card statements. *Id.* at 68. He did not assign an "intended loss" amount to blank checks or bank statements. at 69. The intended loss totaled $22,943.46. (Presentence Report at ¶ 12.)

The Probation Officer examined the pieces of stolen mail and a loss chart prepared by the Postal Inspector and determined that there were 67 different victims who were either the senders or recipients of the stolen mail found in the Defendant's hotel room, on his person, and discarded by the Defendant prior to his arrest. (TR at 70.)

The Probation Officer considered the stolen mail as relevant conduct under U.S.S.G. § 1B1.3 because: "Mr. Lutz possessed a stolen mailbox key which he admitted he attempted to use, and stolen mail was found in the room, and that is a reasonably foreseeable act by Mr. Lutz that he had this stolen mailbox key intended to be used to steal mail, and he also possessed stolen mail when arrested. That is the connection under relevant conduct [between the stolen mail and the key]." *Id.* at 72. "Under the sentencing guidelines, a district court is

required to consider 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction' when determining the appropriate sentence." U.S.S.G. § 1B.1.3.  These acts or omissions must merely be substantially connected to each other by at least one common factor such as a common victim, a common purpose or a similar modus operandi. *Id.*

The evidence presented at the September 24, 2003, sentencing hearing was clear and convincing regarding the number of victims and the amount of loss.  Therefore, the Court enhanced the base offense by four levels for the number of victims exceeding 50 and by four levels for the amount of loss exceeding $10,000.

It was also clear and convincing that the Defendant was in possession of a counterfeit postal service arrow key which enabled him to steal mail from community mailboxes.  Several pieces of the mail found in Defendant's hotel room were stolen from a lock-box, secured by an arrow lock which was not broken open, but was instead opened with an arrow key.  It was reasonably foreseeable for the Defendant to acquire the stolen mail found in his room by using the arrow key he was charged with illegally possessing.

The Court found that the stolen mail found in Defendant's hotel room, on his person, and discarded by him prior to his arrest was part of the same course of conduct as the offense of conviction: possession of a counterfeit postal arrow key.  The Court finds that there was clear and convincing evidence that the stolen mail was connected to the counterfeit key by a common purpose, that being, to steal mail from locked community mail boxes.

The Court rejected the Defendant's narrow view of relevant conduct that the Government was required to establish that the pieces of the stolen mail found in the Defendant's room were taken from a lock-box receptacle by using a lock-box key.  It was reasonably foreseeable that the lock-box key would be used to acquire the stolen mail.

At Defendant's September 24, 2003, sentencing, the Court also found that the Defendant's criminal history was under-represented and departed upward three levels to an

offense level 15, which produced a sentencing range of 41 to 51 months, (RT at 86-87), and imposed a sentence of 46 months in prison.

At Defendant's August 5, 2004, resentencing, the Court made a criminal history upward departure based on the same reasoning: the Criminal History Category VI was grossly under-represented.

The Court noted that the Defendant had 42 criminal history points, which is over three times the normal criminal history points required for placement in Category VI. Of the 42 criminal history points, 39 points were associated with prior convictions of which 35 points were theft related. There were 11, 0-point convictions, nine of which were theft related.

The Court reasoned that if criminal history categories continued beyond category VI, each category would account for 3 points because all the Criminal History Categories beginning with category III span 3 points. The Court reasoned that 15 of the Defendant's criminal history points accounted for his classification up through category VI. Twenty-seven points remained unaccounted for in the Criminal History Category VI classification. Pursuant to U.S.S.G. § 4A1.3(a)(4)(B) to depart up from a Category VI classification, the Court moves incrementally down the sentencing table to the next higher offense level until it finds a guideline range appropriate to the case. Therefore, the Court moved incrementally by every 3 points down the sentencing table to arrive at the offense level of 13, with the guideline sentencing range of 33 to 41 months. There were 9 theft related convictions that received 0 points under the guidelines, which could account for further departure, but the Court did not depart further.

To support its departure, the Court found that a Criminal History Category VI under-represented Defendant's propensity to recommit theft offenses and that such recidivism would not be deterred by any punishment. Defendant began his criminal career in 1985 with a petty theft. In 1989, he committed criminal mischief, damaging property valued at

8

$1,061.51. In 1989, he committed another theft offense and steadily continued to steal after that until the instant offense. He also repeatedly failed to comply with conditions of probation and restitution.

His offenses became progressively more serious, escalating to include drug offenses in combination with theft activities. For example, the drug offense in March 2002, also involved theft of a firearm, misconduct involving weapons, fraud, and forgery charges that were currently pending against him at the time he was being sentenced. There were also drug charges pending against the Defendant stemming from an arrest in July 2002, for driving a vehicle that had been reported as stolen.

Reasoning that each offense standing alone may not seem serious, the steady repetition over his long criminal career resulted in considerable financial losses to society. Combined with his drug addiction, his criminal activities posed a more serious risk to society. The Defendant's criminal record reflected that the only protection afforded society from his criminal activities was during periods of incarceration. The Court found that any sentence imposed would not serve to deter further criminal theft activities, but would serve to protect society during the period of incarceration. The Court sentenced the Defendant to 41 months in prison.

**CONCLUSION:**

The 41 month sentence imposed by the Court falls within the sentencing guideline range for the offense based on the offense enhancements for the number of victims being greater than 50 and the amount of loss being more than $10,000, which is 41 to 51 months. The 41 month sentence also falls within the guideline range for the offense based on the Court's Criminal History Category VI upward departure, which is 33 to 41 months.

In addition to considering the applicable guideline sentence in this case, the Court also considers the sentencing factors in § 3553(a) and the sentencing arguments made by the parties in their resentencing briefs. The Court finds that the sentence it imposed was

sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of subsection 18 U.S.C. § 3553(a). Specifically, it reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense; affords adequate deterrence to criminal conduct; protects the public from further crimes of the defendant; and may provide an ample length of time for the Defendant to secure drug treatment, something the Court noted the Defendant has been unwilling to do in the past.

The Court finds that, considering the applicable guideline range calculation as advisory, it would not have imposed a materially different sentence than the one imposed on August 5, 2004. This remains the Defendant's sentence. There is no reason to resentence the Defendant.

**Accordingly,**

**IT IS ORDERED** that the sentence, reflected in the Judgment and Commitment issued on August 5, 2004, remains the sentence in this case.

**IT IS FURTHER ORDERED** that re-sentencing having been denied by this Court, pursuant to the limited remand provisions set forth in *Ameline*, this Order is final and appealable.

DATED this 3rd day of November, 2005.

David C. Bury
United States District Judge